COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Felton, Judges Alston and Chafin
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.        Record No. 2017-13-3          CHIEF JUDGE WALTER S. FELTON, JR.
                                        MARCH 11, 2014

CHARLES LESLIE HENRY, JR.


FROM THE CIRCUIT COURT OF WISE COUNTY
Chadwick S. Dotson, Judge

Eugene Murphy, Senior Assistant Attorney General (Kenneth T.
Cuccinelli, II, Attorney General, on brief), for appellant.

No brief or argument for appellee.


Pursuant to Code § 19.2-398(A)(2), the Commonwealth appeals the pretrial order of the

Circuit Court of Wise County ("trial court") granting Charles Leslie Henry, Jr.'s ("appellee")

motion to suppress evidence found in appellee's home pursuant to a search warrant.  On appeal,

the Commonwealth asserts that the trial court erred in suppressing evidence found by the officers

who relied on the search warrant in good faith and that the trial court erred in ruling that there

was no probable cause to issue the search warrant.  For the following reasons, we hold the trial

court erred in granting appellee's motion to suppress the evidence located within his residence.

I.  BACKGROUND

On September 24, 2012, Officer Clint Johnson of the Big Stone Gap Police Department

was assigned to the Drug Task Force.  That morning, an anonymous tipster called Officer

Johnson and told him that appellee had marijuana on his property where he was growing and

_____
[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

selling it. The anonymous tipster also gave Officer Johnson appellee's address. In response to that information, Officer Johnson and Virginia State Police Special Agent Christopher Gilley left for appellee's residence. They proceeded to property adjacent to appellee's property. They obtained permission from a neighbor of appellee, whom Officer Johnson knew, to walk through her property to the wood line behind her property in the direction of appellee's residence. As the officers walked through the woods, they saw marijuana growing in pots along the wood line approximately 15 feet from the area of the yard behind appellee's residence where the grass was mown.[1] Officer Gilley testified that the police never identified the property lines.

The officers observed a worn path from the potted marijuana plants to a camper and "a little place they would do a fire." The officers also saw pots, similar to those that the marijuana was growing in, beside an outbuilding 10 to 15 feet from appellee's residence. The two buildings, the outbuilding and the residence, were built in a similar style, with the same siding.

After making these observations, Officer Johnson walked to the residence to talk with the owner. At that time, he discovered appellee was not there. Officer Johnson asked several workmen who were inside the house to leave. The officers then secured the house, without entering, while one of the officers left to obtain a search warrant to search the residence.

The affidavit for the search warrant presented to the magistrate stated that based on the tip, the officers had found 10 pots of marijuana

> growing within 10 feet of the curtilage of this property and within 60 feet of the residents [sic] . . . . A well used and worn path lead [sic] from the marijuana plants to the curtilage of this property. Pots in which the marijuana was growing where [sic] also found in plain view in and around the residents [sic].

---

[1] Officers took photographs depicting what they observed and showed them to the trial court during the suppression hearing.

- 2 -

The magistrate issued a search warrant to the officers to search the residence and outbuildings for evidence relating to the cultivation of marijuana, scales, marijuana, weapons, etc. Relying on the search warrant, the officers returned to appellee's residence and proceeded to execute the search warrant. The officers found marijuana being processed inside appellee's residence.

At the end of the suppression hearing, the trial court specifically found the officers "were acting in good faith." However, the trial court held that it could not find any probable cause or "one shred of reliable evidence that sort of links [the marijuana] up to the actual home." The trial court then granted appellee's motion to suppress evidence found within the residence. The trial court did not suppress "evidence obtained outside the home, in outbuildings or the things that were seen on the property," stating, "there was probable cause to search around the outbuilding and the property there." The trial court also found:

> The affidavit presented to the magistrate contained no probable cause because there was not a sufficient nexus that would justify the application of the good-faith exception. Keep in mind: The *only* evidence upon which the officers relied were (a) an anonymous tip -- which is inherently unreliable; (b) marijuana growing on the property *next door*; (c) a path that *did not* lead to [appellee's] personal residence; and (d) buckets on [appellee's] property that were similar to those with the marijuana.

## II. ANALYSIS

> In an appeal by the Commonwealth of an order of the trial court suppressing evidence, the evidence must be viewed in the light most favorable to the defendant and findings of fact are entitled to a presumption of correctness unless they are plainly wrong or without evidence to support them.

Commonwealth v. Peterson, 15 Va. App. 486, 487, 424 S.E.2d 722, 723 (1992). However, "we review *de novo* the trial court's application of defined legal standards such as probable cause and reasonable suspicion to the particular facts of the case." Cherry v. Commonwealth, 44 Va. App. 347, 356, 605 S.E.2d 297, 301 (2004).

A.

On appeal, the Commonwealth asserts that the trial court erred in finding that the officers knew the marijuana was not on appellee's property. The trial court stated that "the officers *conceded* that they knew the property was not owned by the [appellee]." (Emphasis added). After reviewing the testimony of the officers at the suppression hearing, we find no such concession in the record. Officer Johnson testified that he did not "know the deeds on" the property where he saw the marijuana growing. He testified that he assumed the camper and fire pit, from which a path led to the marijuana plants, were on appellee's property. Officer Johnson also noted that there was a worn path that led from the marijuana plants to the mowed area of appellee's yard and toward an outbuilding that was 10 to 15 feet from appellee's residence where pots similar to those in which the marijuana was growing at the wood line. On cross-examination, Officer Johnson testified that the marijuana plants were growing approximately 10 to 15 feet from the edge of where the grass was mown.

Special Agent Gilley testified that he could not identify where appellee's property lines were in relation to the marijuana growing in pots at the wood line. He also stated that the marijuana plants were found 15 feet from the curtilage (at the end of the mown part of the yard) of the residence.

Here, the trial court erred in making its findings of fact that the officers knew where the property lines were and knew the marijuana was not growing on appellee's property. Neither officer conceded that they knew the marijuana was not on appellee's property. Accordingly, the trial court's finding of fact was "plainly wrong or without evidence to support" it. Venable v. Commonwealth, 12 Va. App. 358, 360, 404 S.E.2d 74, 75 (1991).

- 4 -

B.

On appeal, the Commonwealth also asserts that the search warrant was supported by probable cause and relied upon, in good faith, by the officers. When reviewing the validity of a search warrant, the Court applies a "'totality of the circumstances analysis' to a magistrate's consideration of a warrant application." Cunningham v. Commonwealth, 49 Va. App. 605, 612, 643 S.E.2d 514, 518 (2007) (citation omitted).

> "Finely tuned standards such as proof beyond a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the probable-cause decision." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (citation and internal brackets omitted). Not even a "prima facie showing" of criminality is required. Illinois v. Gates, 462 U.S. 213, 235 (1983) (citation omitted). Instead, probable cause "requires only a probability or substantial chance of criminal activity, *not an actual showing of such activity*." Id. at 243 n.13 (emphasis added). "The Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 145 (1979).

Joyce v. Commonwealth, 56 Va. App. 646, 659, 696 S.E.2d 237, 243 (2010) (footnote omitted).

"'A grudging or negative attitude by reviewing courts toward warrants' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant; 'courts should not invalidate [warrants] by interpreting [affidavits] in a hypertechnical, rather than a commonsense, manner.'" Gates, 462 U.S. at 236 (alterations in original) (quoting United States v. Ventresca, 380 U.S. 102, 108, 109 (1965)). "As an articulated legal standard, probable cause deals with probabilities concerning the factual and practical considerations in everyday life as perceived by reasonable and prudent persons. It is not predicated upon a clinical analysis applied by legal technicians." Lawson v. Commonwealth, 217 Va. 354, 358, 228 S.E.2d 685, 687 (1976).

"[O]ur cases indicate that a sufficient nexus can exist between a defendant's criminal conduct and his residence even when the affidavit supporting the warrant 'contains no factual

assertions directly linking the items sought to the defendant's residence.'" United States v. Grossman, 400 F.3d 212, 217 (4th Cir. 2005) (quoting United States v. Servance, 394 F.3d 222, 230 (4th Cir. 2005)). "In determining whether the affidavit provides a sufficient nexus, 'the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence.'" Gregory v. Commonwealth, 46 Va. App. 683, 691, 621 S.E.2d 162, 166 (2005) (quoting United States v. Anderson, 851 F.2d 727, 729 (4th Cir. 1988)).

Here, the trial court found that there was no "indicia of probable cause either in the affidavit or the admissions by the officers to the magistrates [sic] that would permit the issuance of a search warrant for [appellee's] residence." In its ruling, the trial court relied on United States v. Buffer, 529 Fed. Appx. 482, 2013 U.S. App. LEXIS 13171 (6th Cir. 2013), for the proposition that the officers failed to sufficiently corroborate the anonymous tip. However, in Buffer, the officer merely observed "several visits" to the suspected drug house and found marijuana on a passenger in one of the vehicles leaving the suspected drug house. Id. at 483, 2013 U.S. App. LEXIS 13171, at *2.

This case is distinguishable because the officers had probable cause to believe marijuana was being grown on appellee's property. Here, the marijuana plants were found growing in pots within 10-15 feet of the mowed lawn surrounding appellee's house. Pots, similar to those the marijuana plants were growing in, were seen next to the outbuilding near the residence. These observations by the officers, coupled with the anonymous tip that appellee was growing and distributing marijuana from his property, established probable cause for the magistrate to issue the search warrant. It was objectively reasonable for the magistrate to infer from the information provided in the search warrant affidavit that the officers would likely find marijuana and other evidence of marijuana distribution inside the residence.

As this Court has previously stated:

> A magistrate is entitled to draw reasonable inferences about where incriminating evidence is likely to be found, based on the nature of the evidence and the type of the offense. In the case of drug dealers, evidence of that on-going criminal activity is likely to be found where the dealer resides. Thus, the magistrate reasonably could infer the probability that drugs, or drug paraphernalia, or records, or other evidence of [the suspect]'s suspected drug-related activity would be found in his residence. Gwinn v. Commonwealth, 16 Va. App. 972, 975-76, 434 S.E.2d 901, 904 (1993) (citations omitted); see, e.g., United States v. Williams, 974 F.2d 480, 481 (4th Cir. 1992) (upholding the search warrant because there was a fair probability that drugs would be found in the motel room where a drug dealer resided); United States v. Baldwin, 987 F.2d 1432, 1435-36 (9th Cir. 1993) (recognizing that "in the case of drug dealers, evidence is likely to be found where the dealers live" and that objective facts "established . . . Baldwin was involved in cocaine distribution").

Cunningham v. Commonwealth, 49 Va. App. 605, 613-14, 643 S.E.2d 514, 518 (2007) (alteration in original).

We conclude that the officers clearly acted in good faith in obtaining and executing the search warrant for appellee's residence. The trial court found from the evidence presented that the officers acted in good faith, yet it failed to apply the good faith exception contained in United States v. Leon, 468 U.S. 897 (1984). Here, the officers properly relied "upon the magistrate's probable cause determination and the evidence will not be excluded, even though the affidavit may not have provided the magistrate . . . with probable cause to issue the warrant." Colaw v. Commonwealth, 32 Va. App. 806, 810-11, 531 S.E.2d 31, 33 (2000).

## III. CONCLUSION

For the foregoing reasons, the judgment of the trial court is reversed and the case is remanded for trial.

Reversed and remanded.

Alston, J., dissenting.

I respectfully dissent.[2]

In my view, the search warrant was devoid of any nexus between appellee's residence and the marijuana plants found growing outside on property, the ownership of which was never established. As a result, the search warrant lacked any "'indicia of probable cause'" and the officers could not have objectively and reasonably relied on the magistrate's determination. Anzualda v. Commonwealth, 44 Va. App. 764, 788, 607 S.E.2d 749, 761 (2005) (quoting United States v. Craig, 861 F.2d 818, 822 (5th Cir. 1988)). Therefore, I would affirm the trial court and hold that there was no probable cause to search the residence and that the good faith exception to the exclusionary rule does not apply.

First, I agree with Part A of the majority opinion that the trial court's factual finding that the marijuana plants were growing on a third party's property, not appellee's, was plainly wrong. The record is clear that all parties agreed that no one knew on whose property the marijuana plants, the outbuilding, or the camper and fire site were located. As a corollary, there was no basis for the officers or magistrate to believe that the marijuana plants were located on appellee's property either. The trial court's factual error as to the ownership of the land where the marijuana plants were growing does not affect the fact that in my opinion, the search warrant (and more particularly the underlying affidavit purporting to articulate probable cause supporting the search warrant) failed to establish the requisite nexus between the marijuana plants and appellee's residence.

---

[2] "Dissent" is such a strong term, more often than not suggesting discontent rather than disagreement. While I disagree with my colleagues in this case, I do so appreciative that this beautiful thing we call jurisprudence can inspire us all to achieve the ends of justice through discrete dialogue, respectful exchanges, and earnest professionalism.

The United States Supreme Court has repeatedly recognized that, "'the overriding respect for the sanctity of the home [] has been embedded in our traditions since the origins of the Republic.'" Oliver v. United States, 466 U.S. 170, 178 (1984) (quoting Payton v. New York, 445 U.S. 573, 601 (1980)). Indeed, "[t]he privacy and sanctity of the home have been primary tenets of our moral, philosophical, and judicial beliefs." United States v. Verdugo-Urquidez, 494 U.S. 259, 285-86 (1990) (Brennan and Marshall, JJ., dissenting). The Fourth Amendment protects these core values by requiring a warrant, supported by probable cause, to issue before the government may search a man's home.

> This guarantee of protection against unreasonable searches and seizures extends to the innocent and guilty alike. It marks the right of privacy as one of the unique values of our civilization and, with few exceptions, stays the hands of the police unless they have a search warrant issued by a magistrate on probable cause supported by oath or affirmation. And the law provides as a sanction against the flouting of this constitutional safeguard the suppression of evidence secured as a result of the violation, when it is tendered in a federal court . . . .

McDonald v. United States, 335 U.S. 451, 453 (1948) (citing Weeks v. United States, 232 U.S. 383 (1914)).

"For a search warrant to be supported by probable cause, 'the crucial element is not whether the target of the search is suspected of a crime, but whether it is reasonable to believe that the items to be seized will be found in the place to be searched.'" Cunningham v. Commonwealth, 49 Va. App. 605, 613, 643 S.E.2d 514, 518 (2007) (quoting United States v. Lalor, 996 F.2d 1578, 1582 (4th Cir. 1993)). "Thus, the affidavit supporting the issuance of the warrant for a residence must provide a nexus between the contraband sought and the place to be searched." Id. (citing Janis v. Commonwealth, 22 Va. App. 646, 652, 472 S.E.2d 649, 652 (1996)). "When an affidavit fails to establish, with a fair probability, a link between contraband

and the appellant's residence, a warrant to search the residence is not supported by probable cause." Id.

To determine whether probable cause existed, the first inquiry must be to examine the affidavit purporting to set forth sufficient facts for the magistrate to find probable cause to issue the search warrant, in this case, for appellee's home. "The Fourth Amendment requires that the magistrate receive sufficient information, under oath or affirmation, to support a finding of probable cause." McCary v. Commonwealth, 228 Va. 219, 231, 321 S.E.2d 637, 643 (1984) (citing Illinois v. Gates, 462 U.S. 213, 236 (1983)). While an affidavit insufficient on its face for a probable cause finding may be supplemented by sworn testimony from an officer during the warrant proceedings, facts not disclosed under oath or affirmation to the magistrate will not rehabilitate a deficient affidavit. Id. (citations omitted).

Though not binding authority on this Court, the Sixth Circuit Court of Appeals' decision in United States v. Carpenter, 360 F.3d 591 (6th Cir. 2004), cited by this Court in Anzualda, 44 Va. App. at 786, 607 S.E.2d at 760, is instructive, particularly due to the factual similarities to this case. In Carpenter, while conducting helicopter surveillance, an officer observed patches of marijuana growing in a field about 900 feet away from defendant's residence and "beaten paths" leading from the back door of the defendant's residence to the marijuana patches. Id. at 593. The officer also observed two men walking from the patches to the residence. Id. Another officer sought and obtained a search warrant for defendant's residence, however the affidavit only stated that the officer saw marijuana plants growing near a residence and that a road connected the residence to the plants. Id.

The Sixth Circuit Court of Appeals held that "[t]he facts that marijuana was growing 'near' the residence and that a road ran nearby fall short of establishing the required nexus between the [defendant's] residence and evidence of marijuana manufacturing." Id. at 594.

However, the court affirmed the trial court's denial of defendant's motion to suppress and held that the good faith exception applied because, though the affidavit failed to provide the requisite nexus between the contraband and the residence, it "was not completely devoid of *any* nexus between the residence and the marijuana that the police observed." Id. at 595-96 (emphasis added). The court therefore concluded that "the affidavit contained a minimally sufficient nexus between the illegal activity and the place to be searched to support an officer's good-faith belief in the warrant's validity," notwithstanding that these facts "were too vague to provide a substantial basis for the determination of probable cause." Id. at 596.

In this case, the affidavit failed to set forth *any* facts connecting the residence to the marijuana plants. Officer Johnson received an anonymous tip that appellee was growing marijuana on his property and selling it. It was reasonable for Officer Johnson to follow up on that tip by walking a neighbor's property with permission. Once Officer Johnson observed the marijuana plants, it was reasonable to knock on appellee's door while Officer Gilley went to obtain a search warrant. The facts set forth in the affidavit for the search warrant, however, prove fatal to the subsequent search and any evidence recovered as a result, in my opinion.

The search warrant merely states that based on an anonymous tip, the officers walked through the woods and discovered marijuana plants growing a certain number of feet from the curtilage of appellee's residence (presumably then also a certain number of feet from the neighbor's property on which the officers walked to observe the wood line) and that a "well used and worn path" led from the plants to the curtilage of appellee's property. The warrant also stated that pots similar to those in which the marijuana plants were growing were found "in and around" the residence.

The affidavit neither sets forth the content of the anonymous tip nor any attestation as to the reliability of the informant. "An informant's reliability and basis of knowledge are two key

factors in determining whether, under the totality of the circumstances, probable cause exists." United States v. Gary, 420 F. Supp. 2d 470, 478 (E.D. Va. 2006) (citing United States v. Wilhelm, 80 F.3d 116, 119 (4th Cir. 1996)). "'In evaluating whether an informant's tip establishes probable cause, the degree to which the report is corroborated is an important consideration.'" Id. (quoting Wilhelm, 80 F.3d at 119). In this case, the officers had no knowledge of the basis of the informant's tip and failed to corroborate any aspect of the tip or supply the magistrate with any information as to the tipster's reliability. In my humble opinion, the tip held no weight in the assessment of whether the affidavit provided probable cause to search appellee's home.

Aside from the anonymous tip, the content of which was not even set forth in the affidavit, the only other facts stated in the affidavit were that marijuana plants and pots were found in proximity to the curtilage of appellee's property. Importantly, the affidavit provided no information as to the ownership of the property on which the marijuana was growing or where the pots were stored. While the majority points out that the affidavit states that the marijuana was growing 15 feet from the curtilage (at the end of the mown part of the yard) of appellee's residence, without knowledge of the property lines or any other link to appellee, it could just as easily have been growing on a neighbor's property. Indeed, the officers observed the marijuana plants from a neighbor's property. Proximity to the curtilage of an individual's backyard cannot possibly provide probable cause to search an individual's home, on its own. Even the cases cited by my learned colleagues support this premise.

The officers could have taken any number of steps to corroborate the anonymous tip or otherwise link the marijuana plants to appellee's home sufficient to provide the magistrate with probable cause. They did not take any. There was no assertion that the officers smelled marijuana emitting from inside the residence, saw paraphernalia in plain view inside the

- 12 -

residence from their vantage points around the property, or that they observed anything whatsoever linking the marijuana to the inside of the residence when the officers knocked on appellee's door and secured the residence. Unlike in Carpenter, the affidavit neither provided that the path led from the marijuana plants up to appellee's residence, nor that the officers observed anyone walking from the marijuana plants to appellee's residence. For these reasons, and as particularly observed by the trial court, the search warrant lacked any air of legitimacy at all.

Because the warrant was wholly defective, I further agree with the trial court that the good faith exception should not apply in this case. The good faith exception to the exclusionary rule provides in part that "'[w]here a police officer has an objectively reasonable belief that the issuing magistrate had probable cause to issue the search warrant, the officer may rely upon the magistrate's probable cause determination and the evidence will not be excluded.'" Cunningham, 49 Va. App. at 618, 643 S.E.2d at 521 (quoting Colaw v. Commonwealth, 32 Va. App. 806, 810, 531 S.E.2d 31, 33 (2000)). An objectively reasonable belief that probable cause exists does not exist however, where "the warrant was based on an affidavit 'so lacking in indicia of probable cause' as to render official belief in its existence unreasonable." Id. at 619, 643 S.E.2d at 521 (quoting Colaw, 32 Va. App. at 811, 531 S.E.2d at 33). "[F]or the good faith rule to apply, the affidavit must provide some nexus between the evidence sought and the place to be searched." Id. (citing Janis, 22 Va. App. at 653-54, 472 S.E.2d at 653). In Anzualda, we held that the good faith exception could apply as long as the affidavit for a search warrant set forth *any* nexus between the place to be searched and the item sought. 44 Va. App. at 784, 607 S.E.2d at 759.

The majority notes that the trial court found that the officers acted in good faith yet failed to apply the good faith exception to justify the legitimacy of the search. I respectfully disagree

with this review of the record.  In my opinion, the trial court found the officers acted in good faith in *following up on the tip*, <u>not</u> in executing the search warrant for the residence after following up on the tip; a subtle but very important distinction in my view.  Indeed, the trial court said as much in its letter opinion, which "clarif[ied] and expound[ed] upon the [trial court]'s [previous oral] ruling."  J.A. at 62.  In its letter opinion, the trial court explicitly found that "a reasonably trained police officer should have been able to look at the affidavit and determine[] that it was not reasonable to believe probable cause existed," and declined to apply the good faith exception.  J.A. at 65.  I agree with the trial court.

In my opinion, the affidavit in this case failed to provide even the faintest nexus between the marijuana plants and appellee's residence.  This is not to suggest that there may have been more information available to the officers or that the officers were not attempting as best they could to effectuate a legitimate objective.  However, because the search warrant for the residence was "so lacking in indicia of probable cause," I find the officers' official belief in its legitimacy for their objective unreasonable and I would not apply the good faith exception to the exclusionary rule.  <u>See</u> <u>Colaw</u>, 32 Va. App. at 812, 531 S.E.2d at 34.

While classically and succinctly analyzed, I am concerned that the majority's holding might be interpreted as sanctioning the search of a home based on contraband growing outside on what could be a neighbor's property without anything else linking the contraband to the home.  To be sure, the Fourth Amendment requires more.  Indeed, if we are to maintain the core values the Fourth Amendment was designed to protect, particularly the sanctity and privacy of the home, we *must* require more.  Our current jurisprudence justly expects the government to simply meet a minimal burden of providing through sworn submission "any nexus" between the item sought and the place to be searched.  The interdiction of crime demands that law enforcement be given the tools to successfully prevent and impede unlawful activity.  Did the

government suggest that illegal activity was likely being conducted around the residence sought to be searched herein? Absolutely. But did the government provide a verifiable and sworn nexus between the contraband sought and the place to be searched? I respectfully submit; absolutely not. And the trial court agreed. In this case, in the affidavit supporting the search warrant for the residence, the government failed to provide any nexus between what had been observed around the residence and inside the residence itself and, therefore, I would affirm the trial court's decision to grant appellee's motion to suppress evidence seized in the residence. For these reasons, I respectfully "disagree" with the majority while at the same time remain content in the reasonable dialogue we have achieved.